

Paul P. Rooney (PR-0333)
Amanda M. Fugazy (AF-6772)
FUGAZY & ROONEY LLP
225 Broadway, 39th Floor
New York, New York 10007
(212) 346-0579 (telephone)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

JANE DOE,

                Plaintiff,                08 Civ.

            -against-

LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY      **COMPLAINT**
INSURANCE UNDERWRITERS, INC., and
OSIRIS VARGAS,                                          JURY TRIAL
                                                                         DEMANDED

                Defendants.
------------------------------------------------------------------X

      Plaintiff Jane Doe, for her complaint for unlawful sexual harassment, retaliation, and battery, alleges the following:

## SUMMARY

      1.    This is a civil action seeking damages and injunctive relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, The New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.*, and The New York City Human Rights Law, N.Y. Administrative Code §§ 8-502, *et seq.* and for common law battery.

## PARTIES

      2.    Plaintiff Jane Doe, who is proceeding pseudonymously, is a former employee of Defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Liberty Insurance Underwriters, Inc. which does business under the name "Liberty International Underwriters"

(hereinafter "Liberty International") (collectively with Liberty Mutual referred to as "Liberty"). Plaintiff is a citizen of the State of New York and a resident of New York, New York.

3. Defendant Liberty Mutual is a Massachusetts corporation that has its principal place of business at 175 Berkeley Street, Boston, Massachusetts. Liberty Mutual is a citizen of the State of Massachusetts.

4. Defendant Liberty International is a New York corporation that has its principal place of business at 55 Water Street, New York, New York.

5. Defendant Osiris Vargas ("Vargas") is an individual and former employee of Liberty who resides in Bronx, New York and is a citizen of the State of New York.

## SUBJECT MATTER JURISDICTION

6. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings her claims against Liberty under Title VII.

7. This court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims against Liberty and against Vargas because those claims arise from the same operative facts as her federal claims.

8. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission on April 14, 2008.

9. Plaintiff received a notice of right to sue letter from the EEOC on May 28, 2008.

## PERSONAL JURISDICTION/VENUE

10. This court has personal jurisdiction over the defendants because they are citizens of New York and they committed their unlawful acts against Plaintiff within the State of New York.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the facts giving rise to Plaintiff's claims took place in this judicial district.

## FACTS APPLICABLE TO ALL CLAIMS

12. Liberty employed Plaintiff in another office from March 27, 2006 until April 2007, when she transferred to the Liberty's New York office.

13. Liberty employed plaintiff as a Business Analyst for the Information Technology Department in its New York office from April 2007 until March 2008.

14. Plaintiff's duties were to work with the business managers, underwriters, and technical assistants to identify technology they required to complete their work, choose the technology to be used, and teach classes to Liberty personnel on how to use the newly-acquired technology.

15. On or about June 19, 2007, Plaintiff attended a social event, a birthday party held at a bar in New York, New York, for a co-worker.

16. The party was organized by, and attended by, many other Liberty employees.

17. At that party, Plaintiff's co-worker, Vargas, drugged her and took her to a hotel.

18. When Plaintiff woke up in a bed in the hotel, Vargas was touching her and she had been stripped to her underwear.

19. Initially, Plaintiff decided to keep the incident between herself and her husband because she was fearful of what effect reporting it would have upon her career at Liberty, a male-dominated workplace where the Chief Executive Officer had referred to plaintiff as "the blonde."

20. Plaintiff did tell her supervisor, Steven Sitterly, Global Projects Manager, about what had happened shortly after the incident.

21. Plaintiff also related the incident to the Chief Legal Officer of Liberty International, who is a woman who has since left the company.

22. The Chief Legal Officer stated that Mr. Vargas had done the same thing to her. The Chief Legal Officer further stated that she had not reported it and that if Plaintiff said that Vargas had also assaulted the Chief Legal Officer, she would deny that it had happened to her.

23. As a result of the fact that any further reports would be contradicted and undermined by the Chief Legal Officer of the company, Plaintiff reasonably believed that she could not report it to other company officials without destroying her own career. In addition, Plaintiff lacked faith in the Human Resources Department's ability to handle such a delicate matter with discretion and privacy, having witnessed and overheard members of the Human Resources Department speaking of other employees' private matters in front of other employees.

24. Upon information and belief, at least two other women working for Liberty were assaulted in a similar manner by Vargas.

25. For the next seven months, Plaintiff was forced to work in close proximity to Vargas and to interact with him professionally which caused her emotional distress.

26. Despite this, Plaintiff's performance of her job duties was outstanding and she was consistently complimented by her superiors about her job performance and was constantly recruited both internally within Liberty and externally.

27. On January 28 2008, Plaintiff came to believe that another young woman, a contractor working in the Information Technology Department, was being targeted by Vargas.

28. Plaintiff spoke to the Human Resources Manager, Ms. Lulu Amendola, in confidence, having requested that the conversation be kept "off the record." Ms. Amendola agreed to Plaintiff's request. In the conversation, Ms. Amendola, who is a close friend of the aforementioned Chief Legal Officer, indicated that she knew about the incident between Plaintiff and Vargas.

29. Ms. Amendola caused Liberty to start an investigation.

30. Plaintiff was upset by this and declined to be interviewed by Liberty's personnel because the Chief Legal Officer's comments, and the sexist atmosphere that prevailed at Liberty, convinced her that any "investigation" would only be used against her and be used to harm her reputation at the company.

31. As Plaintiff feared, the investigation was handled in an indiscrete and unprofessional manner. Plaintiff formally complained about Liberty's ineffective response to Vargas' conduct towards her and Liberty ignored her complaint.

32. Liberty personnel paraded witnesses past Vargas's desk and spoke about the matter in open offices, within earshot of Plaintiff, Vargas and many other Liberty employees.

33. As a result of Liberty's inept handling of the investigation, just as Plaintiff had feared, rumors and innuendo began to circulate in her workplace. The information technology helpdesk personnel with whom Vargas worked and with whom Plaintiff had to work closely told her co-workers to avoid Plaintiff, that she was "dangerous," and that she had sued the company (prior to Plaintiff initiating any legal action).

34. Upon information and belief, during this investigation, Amendola, the HR Manager deeply involved in the investigation, told Plaintiff's co-worker that Plaintiff was "crazy."

35. Plaintiff's co-workers also refused to cooperate with Plaintiff in her work making her already challenging job almost impossible.

36. After Plaintiff complained about the mistreatment that had arisen from her conversation with Amendola and Liberty's "investigation," on March 7, 2008, as Plaintiff was leaving work, she received a call from her supervisor at the time, Mr. Carlos Correa.

37. Correa told Plaintiff she had to come back into the building and meet him in his office.

38. Plaintiff went to Correa's office and he and an HR representative (one of the HR representatives about whose conduct of the investigation Plaintiff had complained) informed her that she was being placed on paid leave but gave no explanation of why.

39. Liberty Mutual then had personnel escort her from the building. Believing that she was being terminated for her reports and complaints about retaliation arising from her report of Vargas' conduct towards her, Plaintiff protested the fact that she was being led out of the offices.

40. For almost three weeks Plaintiff received no explanation of why she had been placed on paid leave.

41. Liberty terminated Vargas' employment in or about March 2008.

42. Citing as a pretext Plaintiff's response to being led out of the office, Liberty terminated Plaintiff's employment for protesting Liberty's handling of the investigation and for protesting and opposing the retaliation she suffered as a result of her reports of Vargas' sexual harassment.

43. Liberty International and Liberty Mutual jointly employed Plaintiff and Vargas and/or comprise a single employer and are, accordingly, jointly and severally liable for the sexual harassment and retaliation suffered by Plaintiff.

### COUNT I:
### SEXUAL HARASSMENT CLAIM AGAINST LIBERTY INTERNATIONAL AND LIBERTY MUTUAL UNDER TITLE VII

44. Plaintiff adopts by reference all preceding paragraphs of this Complaint.

45. Defendants Liberty International and Liberty Mutual knew and/or should have known of Vargas' proclivity for sexually assaulting his female co-workers.

46. Defendants Liberty International and Liberty Mutual failed to take reasonable care to ensure that Vargas not have the opportunity to assault other female employees, including Plaintiff.

47. Vargas' conduct towards Plaintiff was objectively and subjectively offensive and was motivated by Plaintiff's sex.

48. Vargas' conduct had a severe detrimental effect upon the terms and conditions of Plaintiff's employment.

49. Consequently, Defendants Liberty International and Liberty Mutual are jointly and severally liable to Plaintiff for sexual harassment under Title VII.

## COUNT II:
## RETALIATION CLAIM AGAINST LIBERTY MUTUAL AND LIBERTY INTERNATIONAL UNDER TITLE VII

50. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

51. Defendants Liberty Mutual and Liberty International discharged Plaintiff from her employment in response to her protests against, and opposition to, the unlawful retaliation she suffered from Liberty Mutual and Liberty International and their agents.

52. Consequently, Defendants Liberty International and Liberty Mutual are jointly and severally liable to Plaintiff for retaliation under Title VII.

## COUNT III:
## SEXUAL HARASSMENT CLAIM AGAINST ALL DEFNDANTS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

53. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

54. On the basis of their aforementioned conduct, Defendants Liberty International, Liberty Mutual, and Vargas are jointly and severally liable to Plaintiff for sexual harassment under the New York City Human Rights Law.

## COUNT IV:
## SEXUAL HARASSMENT CLAIM AGAINST ALL DEFENDANTS UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

55. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

56. On the basis of their aforementioned conduct, Defendants Liberty International, Liberty Mutual, and Vargas are jointly and severally liable to Plaintiff for sexual harassment under the New York State Human Rights Law.

## COUNT V:
## RETALIATION CLAIM AGAINST LIBERTY MUTUAL AND LIBERTY INTERNATIONAL UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

57. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

58. On the basis of their aforementioned conduct, Defendants Liberty International and Liberty Mutual are jointly and severally liable to Plaintiff for retaliation under the New York City Human Rights Law.

## COUNT VI:
## RETALIATION CLAIM AGAINST LIBERTY MUTUAL AND LIBERTY INTERNATIONAL UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

59. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

60. On the basis of the aforementioned conduct, Defendants Liberty International and Liberty Mutual are jointly and severally liable to Plaintiff for retaliation under the New York State Human Rights Law.

## COUNT VII:
## COMMON LAW BATTERY AGAINST DEFENDANT VARGAS

61. Plaintiff adopts by reference all preceding paragraphs of the Complaint.

62. Defendant Vargas negligently, and/or recklessly, and/or intentionally drugged Plaintiff without her consent.

63. Defendant Vargas negligently, and/or recklessly, and/or intentionally touched Plaintiff in a highly offensive manner without her consent.

64. Vargas's actions caused harm to Plaintiff including emotional distress.

65. Consequently, Vargas is liable to Plaintiff for battery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and prays that the Court:

A. Enter judgment in favor of Plaintiff, on Count I of the Complaint, and award her: (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and disbursements; (4) costs; and (5) pre-judgment and post-judgment interest at the prevailing rate; and

B. Enter judgment in favor of Plaintiff, on Count II of the Complaint, and award her (1) back pay; (2) reinstatement to her former position or front pay in lieu of reinstatement; (3) compensatory damages; (4) punitive damages; (5) attorneys' fees and disbursements; (6) costs, and (7) pre-judgment and post-judgment interest at the prevailing rate; and

C. Enter judgment in favor of Plaintiff on Count III of the Complaint, and award her (1) compensatory damages; (2) punitive damages; (3) attorneys' fees and disbursements; (4) costs; and (5) pre-judgment and post-judgment interest at the prevailing rate; and

D. Enter judgment in favor of Plaintiff on Count IV of the Complaint, and award her (1) compensatory damages; disbursements; (2) costs; and (3) pre-judgment and post-judgment interest at the prevailing rate

E. Enter judgment in favor of Plaintiff, on Count V of the Complaint, and award her (1) back pay; (2) reinstatement to her former position or front pay in lieu of reinstatement; (3) compensatory damages; (4) punitive damages; (5) attorneys' fees and disbursements; (6) costs, and (7) pre-judgment and post-judgment interest at the prevailing rate; and

F. Enter judgment in favor of Plaintiff, on Count VI of the Complaint, and award her (1) back pay; (2) reinstatement to her former position or front pay in lieu of reinstatement; (3) compensatory damages; (4) costs, and (5) pre-judgment and post-judgment interest at the prevailing rate; and

G. Enter judgment in favor of Plaintiff on Count VII of the Complaint and award her compensatory and punitive damages and costs; and

H.  On all counts, Award Plaintiff such other relief as the Court deems appropriate.

Dated:   June 13, 2008
         New York, New York

                                    Respectfully submitted,

                                    FUGAZY & ROONEY LLP

                                    By: _____
                                          Paul P. Rooney (PR-0333)
                                          Amanda M. Fugazy (AF-6772)
                                    225 Broadway, 39th Floor
                                    New York, New York 10007
                                    (212) 346-0570

                                    *Attorneys for Plaintiff Jane Doe*